## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

KENNETH     DAYWITT,     RUSSELL
HATTON, STEVEN HOGY, MERLIN
ADOLPHSON, MICHAEL WHIPPLE,
and PETER LONERGAN,

                       Plaintiffs,

v.

JODI HARPSTEAD, et al.,

                       Defendants.

Case No. 20-CV-1743 (NEB/KMM)

ORDER ON MOTION TO AMEND,
MOTION TO DISMISS, AND MOTION
FOR A TEMPORARY RESTRAINING
ORDER

---

Plaintiffs, six civilly committed people who reside at the Minnesota Sex Offender

Program's ("MSOP") Moose Lake facility,[1] sued Jodi Harpstead[2] and several MSOP

employees, alleging that the MSOP's restrictions on clients' internet use are

unconstitutional. Pending before the Court are several motions, including Plaintiffs'

---

[1] Plaintiffs are Kenneth Daywitt, Russell Hatton, Steven Hogy, Merlin Adolphson, Michael Whipple, and Peter Lonergan. The original complaint named David Jannetta as a plaintiff and did not include Hatton, but for the reasons discussed below, the Court treats Plaintiffs' Amended Complaint as the operative complaint. *See infra* at 2 n.3.

[2] Harpstead is the Commissioner of the Minnesota Department of Human Services. Plaintiffs' complaints, motions, and briefs misspell the Commissioner's name. The Court will use the correct spelling.

motion for a temporary restraining order and Defendants' motion to dismiss.[3] For the reasons below, the Court denies Plaintiffs' motion for injunctive relief and grants in part and denies in part Defendants' motion to dismiss.

## BACKGROUND

The MSOP has several policies restricting Plaintiffs' ability to use technology; Plaintiffs challenge three. (ECF No. 26-1 ("Am. Compl.") ¶ 4; *id.* at 33 (asking the Court to declare these policies unconstitutional).)

First, the MSOP's Client C-Mail policy permits clients' friends and family to send emails to clients but prohibits clients from sending outgoing emails. (ECF No. 38-1, Ex. A.[4]) Second, a Client Computer Network policy limits clients' use of MSOP-provided computers. (ECF No. 38-1, Ex. B.) Under this policy, clients may only use computers for "approved purposes," such as completing treatment assignments, doing word processing, and conducting legal research and writing. (*Id.* at 2, 5–6.) The policy does not allow clients internet access. (*See* Am. Compl. ¶¶ 10–15, 36, 57.) Third, a Video Visiting

---

[3] The two additional motions relate to the Plaintiffs' right to amend. After Plaintiffs moved to amend their Complaint, Defendants conceded that Plaintiffs had that right and stipulated that the Amended Complaint is operative. (ECF No. 45 at 1 n.1); Fed. R. Civ. P. 15(a)(1). Thus, the Court grants Plaintiffs' motion to amend, (ECF No. 26), denies as moot Defendants' motion to dismiss the original complaint, (ECF No. 35), and treats the Amended Complaint as operative.

[4] In deciding a motion to dismiss, the Court may consider material incorporated into the Amended Complaint by reference. *Podraza v. Whiting*, 790 F.3d 828, 833 (8th Cir. 2015) (citation omitted). The Amended Complaint references the MSOP policies, (Am. Compl. ¶¶ 4, 6), so the Court will consider them.

policy permits clients to visit with family, friends, or support personnel via videoconferencing software. (ECF No. 38-1, Ex. C.) But clients may only use this option to visit with someone on his or her deathbed or to conduct a "clinically supported visit." (*Id.* at 1–2.)

Plaintiffs contend that the three challenged policies violate the First and Fourteenth Amendments. (Am. Compl. ¶¶ 106–20.) They claim that the internet prohibition "denie[s] them their constitutional rights to speech, association, and press." (*Id.* ¶ 110.) Among other things, Plaintiffs wish to communicate with friends and family, learn about political candidates, and access local news. (*E.g., id.* ¶¶ 36, 41.) They also argue that the restrictions violate their Fourteenth Amendment substantive due process rights. (*Id.* ¶¶ 112–20.)

## ANALYSIS

Defendants move to dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (ECF No. 43.) Under Rule 12(b)(1), a party may move to dismiss an action for lack of subject-matter jurisdiction. If this Court finds that it lacks subject-matter jurisdiction over the case, it must dismiss it. *Bueford v. Resol. Tr. Corp.*, 991 F.2d 481, 485 (8th Cir. 1993) (citation omitted).

Rule 12(b)(6) requires that the Court dismiss a complaint if it lacks "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When reviewing a Rule 12(b)(6) motion, a court must "tak[e] all facts

alleged in the complaint as true, and mak[e] reasonable inferences in favor of the nonmoving party." *Smithrud v. City of St. Paul*, 746 F.3d 391, 397 (8th Cir. 2014). In addition, *pro se* complaints "are to be construed liberally." *Stringer v. St. James R-1 Sch. Dist.*, 446 F.3d 799, 802 (8th Cir. 2006) (citation omitted). Although the factual allegations need not be detailed, they "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Thus, where a complaint alleges "facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## I.   First Amendment Claims

Although Plaintiffs explicitly pled that the MSOP has violated the First Amendment only by denying Plaintiffs access to the internet, their Amended Complaint can be fairly interpreted as bringing a right of access to the courts claim and a free exercise claim. (Am. Compl. ¶¶ 106–111 ("Rights to Access The Internet, And Access to Many Other Mediums"); ¶ 61 (alleging that the inability to access the internet prevents Daywitt from "filing and receiving filings from opposing counsel in a timely manner"); ¶¶ 53, 70 (alleging that being unable to access the internet prevents some Plaintiffs from practicing

their religions).) Construing the Amended Complaint liberally, as the Court must do, the

Court addresses all three claims. *Stringer*, 446 F.3d at 802 (citation omitted).

### A. Access to the Internet

Though generally pled as a First Amendment right to access the internet claim,

(Am. Compl. ¶¶ 106–11), a claim for which there seems to be no support in case law,[5]

Plaintiffs' claims can also be construed as a First Amendment denial of the right to access

information. *Bd. of Educ., Island Trees Union Free Sch. Dist. No. 26 v. Pico*, 457 U.S. 853,

866–67 (1982) ("[T]he Constitution protects the right to receive information and ideas.")

(citations omitted); *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965) ("The right of freedom

of speech and press includes not only the right to utter or to print, but . . . the right to

receive, the right to read and freedom of inquiry, freedom of thought.") (citations

omitted). For civilly committed people, though, these rights are not absolute. *Beaulieu v.*

---

[5] Plaintiffs heavily rely on *Packingham v. North Carolina* to argue that they have a constitutional right to access the internet generally, and social media specifically. 137 S. Ct. 1730 (2017). But *Packingham* dealt with restrictions on the use of social media by registered sex offenders, including those who had completed their sentences. *Id.* at 1737; *see United States v. Carson*, 924 F.3d 467, 473 (8th Cir. 2019) (joining other circuits that have determined that *Packingham* "invalidated only a *post*-custodial restriction" and determining that its holding does not apply to those currently serving their sentence) (citations omitted; emphasis original); *United States v. Perrin*, 926 F.3d 1044, 1049 (8th Cir. 2019) (same and collecting cases). Civilly committed people, after all, have less liberty interests than members of the public. *Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006); *Ivey v. Johnston*, No. 18-CV-1429 (PAM/DTS), 2021 WL 120746, at *2 n.1 (D. Minn. Jan. 13, 2021) (concluding that *Packingham* did not apply because the MSOP client was subject to "different standards").

*Ludeman*, 690 F.3d 1017, 1038–39 (8th Cir. 2012) ("Any form of involuntary confinement, *whether incarceration or involuntary commitment,* may necessitate restrictions on the right to free speech.") (citation omitted; emphasis original); *Senty-Haugen*, 462 F.3d at 886 (noting that the liberty interests of a civilly committed person are "considerably less" than a member of the public).

Assuming that Plaintiffs have a First Amendment right to receive information, the Court analyzes their claim under the modified *Turner* analysis that courts in this District have applied to MSOP clients' constitutional claims.[6] *E.g.*, *Karsjens*, 6 F. Supp. 3d at 937 (citing *Turner v. Safley*, 482 U.S. 78 (1987)); *Ivey*, 2021 WL 120746 at *5–6. Under the modified *Turner* analysis, the Court considers four factors: (1) whether the challenged policies are rationally related to the MSOP's institutional or therapeutic interests; (2) whether Plaintiffs have alternative avenues of exercising their rights; (3) the effect granting Plaintiffs' requested relief would have on the "MSOP, its resources, staff, and other clients"; and (4) "whether simple and cost-effective alternatives exist that meet the program's objections." *Ivey*, 2021 WL 120746, at *1 (citations omitted); *see also Banks v.*

---

[6] This analysis is a modified version of the Supreme Court's test for prisoners' claims that prison regulations infringe on their constitutional rights, set out in *Turner v. Safley*, 482 U.S. 78, 89–91 (1987). *See also Murchison v. Rogers*, 779 F.3d 882, 887 (8th Cir. 2015) (citation omitted). The modification, meant to accommodate the principle that civilly committed people have greater liberty interests than prisoners but less than members of the public, requires a court to analyze whether a regulation is "reasonably related to legitimate institutional and therapeutic interests." *Karsjens v. Jesson*, 6 F. Supp. 3d 916, 937 (D. Minn. 2014); *Ivey v. Johnston*, No. 18-CV-1429 (PAM/DTS), 2021 WL 120746, at *1 (D. Minn. Jan. 13, 2021) (citations omitted).

*Jesson*, No. 11-CV-1706 (SRN/LIB), 2017 WL 1901408, at *7–8 (D. Minn. May 8, 2017) (explaining that courts in this District use a modified *Turner* analysis). Plaintiffs bear the burden of establishing these factors. *Banks*, 2017 WL 1901408 at *7 (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)). The modified *Turner* analysis is a fact-dependent inquiry, and like the ordinary *Turner* analysis, it requires "careful examination of the policies and institutions at issue in each case." *Simpson v. Cnty. of Cape Girardeau*, 879 F.3d 273, 282 (8th Cir. 2018).

Plaintiffs have alleged facts sufficient to survive a motion to dismiss. First, they allege that the challenged policies have a counter-therapeutic effect. (Am. Compl. ¶¶ 62, 66, 72, 76, 83, 94.) If proven true, the first modified *Turner* factor would favor Plaintiffs. Second, Plaintiffs contend that, at least for some informational sources, they cannot access the information offline. (*Id.* ¶¶ 41, 42, 63 (alleging that certain media, including newspapers, magazines, and tribal newsletters are only available online).) Third and fourth, Plaintiffs allege that accommodating their desire to access the internet would impose minimal burdens on MSOP. For example, Plaintiffs charge that the MSOP already uses software prohibiting its employees from accessing certain websites. (Am. Compl. ¶¶ 49, 50.) It is reasonable to infer, at this stage, that the MSOP could use similar software to restrict clients' internet access, thus imposing a minimal burden on the MSOP. Thus, because Plaintiffs adequately plead allegations that would allow them to prevail under the modified *Turner* analysis, and because the modified *Turner* analysis is fact-specific

and ill-suited to deciding a claim on a motion to dismiss, the Court will not dismiss Plaintiffs' First Amendment right to access information claim.[7]

### B. *Access to the Courts*

As noted above, Plaintiffs also appear to bring a First Amendment right to access the courts claim.[8] (Am. Compl. ¶ 36 (alleging that the challenged policies deny Plaintiffs "access to the courts electronically to file and receive documents on their cases")).) A plaintiff bringing such a claim must show a cognizable injury, such as hindrance to an ability to proceed with a legal claim. *Sabers v. Delano*, 100 F.3d 82, 84 (8th Cir. 1996) (citation omitted). But the First Amendment does not require that a person be able to "litigate effectively once in court." *Id.* (internal quotation and citation omitted). Plaintiffs have not alleged that they are prohibited from suing. In fact, they note that Daywitt is

---

[7] The Court notes that within the past half-decade two other courts in this District have dismissed similar claims on similar facts. *See Ivey*, 2021 WL 120746, at *1–3 (concluding that the plaintiff's challenge to the MSOP's ban on internet use fails under the modified *Turner* analysis); *Banks v. Jesson*, No 11-CV-1706 (SRN/JSM), 2016 WL 3566207, at *9–10 (D. Minn. June 27, 2016) (finding that the plaintiff had no constitutional right to a computer or to access the internet and even if he did, his claim would fail under the modified *Turner* analysis). The key difference is that those cases are summary judgment decisions and were not decided on the motion-to-dismiss standard. The lack of factual development here makes summary dismissal inappropriate. *E.g.*, *Stone v. Jesson*, No. 11-CV-951 (WMW/HB), 2017 WL 1050393, at *4 (D. Minn. Mar. 17, 2017) (distinguishing cases at the summary judgment stage and explaining that the court cannot conduct a *Turner* analysis on a barren record).

[8] In their brief in opposition to the motion to dismiss, Plaintiffs implicitly confirm that they are bringing a right of access to the courts claim. (ECF No. 64 at 22–23 (arguing that Plaintiffs have adequately pled a right of access claim).)

"fairly litigious." (Am. Compl. ¶ 61.) Plaintiffs' argument seems to be that with access to the internet, they would be more efficient and effective litigators. But having to litigate comparatively inefficiently is not a cognizable injury, so the Court must dismiss the right of access claim.

### C. Free Exercise

Again, as noted above, the Amended Complaint may also be read as alleging a free exercise claim. (*See* Am. Compl. ¶¶ 36 (alleging that the policies prohibit Plaintiffs from engaging in "spiritual pursuits"); 53 (alleging that Daywitt is "stymied" from participating in his faith); 70 (alleging that Lonergan is unable to fully participate in his faith community); 86 (alleging that Hatton cannot practice his religion).) To state this claim, Plaintiffs must allege that the MSOP's policies place a substantial burden on their ability to practice their religion. *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008) (citation omitted). For this claim, "substantial burden" constitutes a denial of Plaintiffs' "reasonable opportunities to engage in those activities that are fundamental to [Plaintiffs'] religion." *Id.* (internal quotation and citation omitted).

Plaintiffs' Complaint adequately alleges such a burden. (Am. Compl. ¶¶ 36, 53, 70, 86.) This claim is also subject to a modified *Turner* analysis. *Karsjens v. Piper*, 336 F. Supp. 3d 974, 992 (D. Minn. 2018), *overruled on other grounds by Karsjens v. Lourey*, 988 F.3d 1047 (8th Cir. 2021). And for the reasons outlined above, the Court refuses to grant Defendants' motion to dismiss on this fact-specific issue. *See supra* Analysis I.A.

## II.      Substantive Due Process

Plaintiffs' second enumerated claim is for a violation of their Fourteenth Amendment substantive due process rights. (Am. Compl. ¶¶ 112–120.) A plaintiff cannot invoke substantive due process "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Stop the Beach Renourishment, Inc. v. Fla. Dept. of Env't Prot.*, 560 U.S. 702, 721 (cleaned up); *Mendoza v. U.S. Immigr. & Customs Enf't*, 849 F.3d 408, 420–21 (8th Cir. 2017) (same). Plaintiffs have brought colorable claims that the MSOP's policies violate the First Amendment. Since the Court can analyze the claims under the First Amendment, Plaintiffs may not bring a separate substantive due process claim.

In their brief, Plaintiffs claim that their substantive due process claim is "more than that which is claimed in their First Amendment claim." (ECF No. 64 at 25.) But Plaintiffs have not alleged, nor can the Court infer, any separate violation, so this claim is dismissed.[9]

---

[9] Plaintiffs' Amended Complaint mentions unspecified statutory and common law violations, and Plaintiffs claim that, in the interest of judicial economy, these should not be dismissed. (Am. Compl. ¶ 5.) But any judicial economy concerns cannot outweigh Plaintiffs' failure to adequately plead any statutory or common law claims. To the extent that Plaintiffs are asserting such claims, they are dismissed.

### III.    Immunity

Even though portions of the Complaint survive the motion to dismiss, the Court must also address immunity, and must dismiss parts of Plaintiffs' Amended Complaint under immunity doctrines.

### A. *Qualified Immunity*

Government officials have qualified immunity from suits for civil damages when "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (1993) (citation omitted). A right is clearly established if "the contours of the right are such that a reasonable official would understand that what he or she is doing violates that right." *Morris v. Clifford*, 903 F.2d 574, 576 (8th Cir. 1990) (citations omitted). Defendants are entitled to qualified immunity because Plaintiffs have not alleged that Defendants violated any "clearly established" rights. To the contrary, courts have determined that the MSOP's policies restricting internet usage are not unconstitutional. *Ivey*, 2021 WL 120746, at *2–3; *Banks*, 2016 WL 3566207, at *9–10. Internet usage for MSOP clients is far from a clearly established right, and thus Defendants have qualified immunity from the claims for civil damages against them in their individual capacities.[10]

---

[10] Qualified immunity does not apply to Plaintiffs' claims for injunctive and declaratory relief. *Hamner v. Burls*, 937 F.3d 1171, 1175 (8th Cir. 2019).

### B. *Sovereign Immunity*

As Plaintiffs concede, the Eleventh Amendment prohibits Plaintiffs from seeking monetary damages from state officers in their official capacities. (ECF No. 64 at 28); *Treleven v. Univ. of Minn.*, 73 F.3d 816, 818 (8th Cir. 1996) (citation omitted). Thus, to the extent Plaintiffs are seeking monetary damages from Defendants in their official capacities, their claims are dismissed.

### C. *Lack of Allegations of Personal Wrongdoing*

Defendants argue that the Complaint fails to state a claim that any of Defendants were personally involved in the alleged constitutional violations. (ECF No. 45 at 23–24.) But drawing reasonable inferences in favor of Plaintiffs and construing their allegations liberally, the Court concludes that Plaintiffs have adequately alleged personal involvement. They have alleged that Defendants have "implemented, retained, and carried out" the challenged policies. (Am. Compl. ¶¶ 16–23; see ECF No. 45 at 24 (conceding that "it can reasonably be inferred some Defendants have responsibility for setting MSOP policy").) According to the Complaint, all Defendants are in supervisory positions, and one Defendant is the "IT Lead." (Am. Compl. ¶¶ 16–23.) Thus, the Court can reasonably infer that Defendants are involved in setting or enforcing the MSOP's policies on technology. The claim cannot be dismissed at this stage on this ground.

### IV.     Temporary Restraining Order

Plaintiffs seek a temporary restraining order requiring Defendants to allow them access to court filing websites, email, e-commerce websites, and religious, educational, and "political/media" sites. (ECF Nos. 51, 56.) Though Plaintiffs frame the motion as a motion for a temporary restraining order, the motion is better characterized as a motion for a preliminary injunction. A temporary restraining order is typically issued without notice to the adverse party and expires after fourteen days unless the court extends it. *C.S. McCrossan Constr., Inc. v. Minn. Dep't of Transp.*, 946 F. Supp. 2d 851, 857 n.10 (D. Minn. 2013) (citations omitted); Fed. R. Civ. P. 65(b). Because Defendants had notice of the motion and Plaintiffs seek an order that would be in effect "while this litigation is pending" (*i.e.*, more than fourteen days), (ECF No. 56), the Court treats Plaintiffs' motion as one for a preliminary injunction. In any event, both motions are analyzed under the same standard. *C.S. McCrossan*, 946 F. Supp. 2d at 857 n.10 (citation omitted).

A preliminary injunction is an "extraordinary remedy" which is "never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). The Court considers four factors in deciding whether to grant a preliminary injunction: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between this harm and the injury that granting the injunction will inflict on the other parties; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). As the party seeking injunctive relief,

Plaintiffs bear the burden of showing that these factors support the issuance of a preliminary injunction. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006) (citation omitted).

### A. Likelihood of Success on the Merits

The likelihood of success on the merits is the most important *Dataphase* factor. *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation omitted). When assessing this factor, the Court need not determine whether Plaintiffs will ultimately succeed, but it must decide whether they have a "fair chance of prevailing." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 731–32 (8th Cir. 2008). To show they have a "fair chance of prevailing," Plaintiffs need not show that they are more likely than not to prevail on the merits. *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044–45 (8th Cir. 2020) (citing *Dataphase*, 640 F.2d at 113). Rather, Plaintiffs need only establish that they are likely to succeed on the merits of one of their claims. *Richland/Wilkin Joint Powers Auth. v. U.S. Army Corps of Eng'rs*, 826 F.3d 1030, 1040 (8th Cir. 2016) (citation omitted). Plaintiffs have not shown that they are likely to succeed on any of their claims.

### 1. First Amendment Right to Receive Information

Plaintiffs are unlikely to succeed on the merits of their First Amendment right to receive information claim under the modified *Turner* analysis. On the first factor, Plaintiffs are unlikely to prove that the challenged policies are not reasonably related to

the MSOP's "legitimate institutional and therapeutic interests." *Karsjens*, 336 F. Supp. 3d at 992. These policies serve the MSOP's interest in rehabilitating its clients and maintaining security in its facilities. *Banks*, 2017 WL 1901408, at *8; *Ivey*, 2021 WL 120746, at *2; *Banks*, 2016 WL 3566207, at *10.

The second factor also favors the MSOP. Plaintiffs have many other ways to receive the information they wish to access. Among other things, Plaintiffs wish to access to internet to become informed voters, further their education, and learn more about subjects that they are passionate about. (Am. Compl. ¶¶ 54, 69, 88.) But they have not established that they lack other ways to access this information. Plaintiffs are allowed to possess books and other print media that comply with other MSOP policies. (ECF No. 69-1 at 4, 7 (ECF pagination).) Even though Plaintiffs allege that some of the media they wish to access is exclusively available online (or that one day it might be), (Am. Compl. ¶¶ 41–42), Plaintiffs have not pointed to, and the Court cannot find, any cases suggesting a First Amendment right to access specific publications. Because Plaintiffs may receive the information they seek via offline means, the second modified *Turner* factor favors the MSOP. *See Ivey*, 2021 WL 120746, at *2 (concluding that an MSOP client had alternative means to access information about politics).

Finally, the third and fourth modified *Turner* factors favor the MSOP. Plaintiffs have not shown that accommodating their request for internet access would impose only minimal effects on the MSOP. Plaintiffs allege that the MSOP currently uses software that

restricts its employees' access to certain sites and claim that the MSOP could simply extend this software to clients' use of the internet. (Am. Compl. ¶¶ 49–50.) But aside from these allegations, Plaintiffs have provided scant evidence that using this software to restrict clients' access to the internet would be feasible or that it would not significantly burden the MSOP. (ECF No. 69 ¶¶ 11–36 (Lonergan, who has a background in informational technology, explaining that limiting clients' access to the internet would be feasible).) Another court in this district recently determined that permitting MSOP clients limited access to the internet would significantly burden the MSOP. *Ivey*, 2021 WL 120746, at *2–3. Thus, all four modified *Turner* factors favor Defendants, meaning Plaintiffs are unlikely to succeed on the merits for this claim.

   2.   *Free Exercise*

Nor are Plaintiffs likely to succeed on their free exercise claim. First, Plaintiffs have not shown that the burdens on their ability to practice their religions are substantial. *Patel*, 515 F.3d at 813. And even if the burdens were substantial, their free exercise claim would be subject to the modified *Turner* analysis, which, for the reasons explained in the previous subsection, favor the MSOP's policies. Thus, Plaintiffs have not shown that they are likely to succeed on the merits of their free exercise claim.[11]

---

[11] Because the Court is dismissing Plaintiffs' right to access the courts and substantive due process claims, the Court will not analyze whether Plaintiffs are likely to succeed on these claims.

### B. *Irreparable Harm*

Even if Plaintiffs were to establish that they are likely to succeed on the merits, they would also have to show a threat of irreparable injury without a preliminary injunction. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 318 (8th Cir. 2009) (citations omitted). To establish irreparable injury, Plaintiffs must show that money damages cannot compensate their injuries. *Id.* at 319.

Plaintiffs claim irreparable injury because some of their filings in other litigation have not been filed. (ECF No. 53 at 8.) But this issue appears to stem from confusion about Plaintiff Lonergan's submissions to the court, rather than an inability to file documents with the court. Lonergan admits that he managed to send his filings and that the court received them. (ECF No. 55 ¶ 7.) Plaintiffs also claim that they are denied meet and confer conferences, but they have not explained how an injunction would remedy this problem, or why they cannot conduct meet and confer conferences by phone.[12]

Plaintiffs summarily claim irreparable injury because they are "miss[ing] out on important news, political debates & other speech protected by the First Amendment." (ECF No. 53 at 8.) But again, Plaintiffs ignore the myriad other avenues to this information.[13] Plaintiffs have not shown irreparable injury.

---

[12] The Court notes that Plaintiffs have participated in at least two meet and confer conferences in this case. (ECF No. 39, 46.)

[13] Plaintiffs also claim irreparable injury because denying them access to the internet will spur more litigation, which will consume judicial resources. (ECF No. 53 at 9.) But this

## C.  *Balance of the Harms*

The balance of the harms weighs against granting an injunction. As discussed above, Plaintiffs have not established an irreparable injury. On the other hand, the MSOP would face significant administrative burdens if required to allow its clients access to the internet. (*E.g.*, ECF No. 61-1, Ex. B. ¶¶ 12–14, 23–25); *see Ivey*, 2021 WL 120746, at *2–3 (explaining the impracticality of allowing MSOP clients access to the internet).

## D.  *Public Interest*

Finally, Plaintiffs have not shown that the public interest favors an injunction. Plaintiffs cite many sweeping statements about the importance of access to the internet, (ECF No. 53 at 12–13), but ignore that these statements do not apply with equal weight to civilly committed people. *Senty-Haugen*, 462 F.3d at 886 (explaining that civilly committed people have less liberty interests than "members of free society"). Further, Plaintiffs' argument boils down to a personal interest in accessing the internet, rather than a public interest in allowing them to access the internet. And even if the public has an interest in civilly committed people using the internet, this deference owed to the MSOP in administering its program outweighs this interest. *Senty-Haugen*, 462 F.3d at 887 ("[F]ederal courts are to give deference to state officials managing a secure facility.") (citations omitted).

---

argument ignores the fact that the irreparable injury must be *to the movant*, not to some third party, such as the Court. *Dataphase*, 640 F.2d at 114.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS

HEREBY ORDERED THAT:

1.     Plaintiffs' motion for leave to file an amended complaint (ECF No. 26) is

GRANTED;

2.     Defendants' motion to dismiss Plaintiffs' original complaint (ECF No. 35) is

DENIED AS MOOT;

3.     Defendants' motion to dismiss Plaintiffs' amended complaint (ECF No. 43)

is GRANTED IN PART and DENIED IN PART;

a.     Plaintiffs' First Amendment right of access to the courts and

substantive due process claims are DISMISSED WITHOUT

PREJUDICE;

b.     To the extent that Plaintiffs' claims seek civil damages against

Defendants in either their individual or official capacities, these

claims are DISMISSED;

c.     Plaintiffs' other claims remain pending; and

4.      Plaintiffs' motion for a temporary restraining order (ECF No. 51) is

DENIED.

Dated: June 1, 2021                          BY THE COURT:

                                             s/Nancy E. Brasel
                                             Nancy E. Brasel
                                             United States District Judge