# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Kenneth S. Daywitt, David Jannetta, Steven Hogy, Merlin Adolphson, Michael Whipple, Peter Longergan, and Russell Hatton

                Plaintiffs,

v.

Jodi Harpstead, Marshall Smith, Nancy Johnston, Jim Berg, Jannine Herbert, Kevin Moser, Terry Kniesel, and Ray Ruotsalainen,

                Defendants.

Case No. 20-cv-1743 (NEB/HB)

**ORDER**

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiffs' Motion to Suspend LR 7.1(a), LR 7.1(a)(1) and LR 7.1(b)(v) [ECF No. 152] and Plaintiffs' Motion for Payment of Fees and Costs [ECF No. 168].  The motions are fully briefed, and consonant with the Court's scheduling order, the Court finds it appropriate to rule on the motions on the papers without a hearing.  For the reasons set forth below, the Court will deny both motions.

## I.    Plaintiffs' Motion to Suspend Local Rule 7.1

Plaintiffs move to suspend Local Rules 7.1(a), 7.1(a)(1) and 7.1(b)(1)(E).[1] [ECF No. 152.]  Local Rule 7.1(a) requires parties to meet and confer before a motion is filed,

---

[1] Plaintiff's motion refers to Local Rule 7.1(b)(v), but there is no such rule.  The Court construes that as a reference to Local Rule 7.1(b)(1)(E), which requires the filing of a meet-and-confer statement with any nondispositive motion.

1

"in a good-faith effort to resolve the issues raised by the motion." LR 7.1(a). It further requires the moving party to file with the motion a statement certifying that the parties have met and conferred unless the opposing party was unavailable to meet and confer beforehand, in which case the moving party "must promptly meet and confer with the opposing party after filing the motion and must supplement the motion with a meet-and-confer statement." LR 7.1(a)(1)(A). Local Rule 7.1(b)(1)(E) reiterates the requirement that a meet-and-confer statement be filed with any nondispositive motion. Plaintiffs ask the Court to suspend the meet-and-confer requirement or, in the alternative, to suspend the time constraints relating to the filing of motions and related papers to allow Plaintiffs the opportunity to meet and confer with counsel by way of United States Postal Service.

Plaintiffs state in their motion that due to the restrictions in the Minnesota Sex Offender Program ("MSOP") facility and COVID protocols at the Attorney General's Office, Plaintiffs were unable to contact Defendants' counsel telephonically. [ECF No. 152 at 1.] However, if that was the situation originally, Defendants' counsel have since remedied it. (Def.'s Mem. Opp. Class Cert. & Mot. Suspend L.R. 7.1 at 23-24 [ECF No. 156].) Defendants' counsel furnished Plaintiffs with cellphone numbers to connect with attorneys working remotely and provided mailing addresses for written correspondence. (Shaw Decl. Ex. A. at 1 n.1 [ECF No. 157-1 at 1]; Shaw Decl. Ex. C at 2 [ECF No. 157-1 at 11].) Plaintiffs have subsequently met and conferred telephonically with Defendants' counsel regarding several motions, including Plaintiffs' class certification motion and the instant motion (Shaw Decl. ¶ 3-4 [ECF No. 157]; *see also* Shaw Decl. Ex. A at 1) and no fewer than four times regarding other motions. [ECF Nos. 170, 183, 197, 203.]

Plaintiffs further argue, however, that they "are uncomfortable speaking of this case in front of defendants,[2] given defendants['] track-record for dishonesty before the *Ivey* court." (Pls.' Reply Class Cert. & Mot. Suspend L.R. at 5 [ECF No. 160].) Relatedly, Plaintiffs complain about the requirement imposed by MSOP that they use monitored phone lines for any calls other than with their own counsel, as well as the inability to hold conference calls. (*Id*. at 27) Thus, if the Court is not willing to suspend the meet-and-confer requirement altogether, they ask the Court to order Defendant Johnston to place opposing counsels' cellphone numbers on the Approved Attorney Call List at the MSOP facility. (*Id.* at 5.)

The Pretrial Scheduling Order requires that "[a]ll nondispositive motions must comply with Local Rules 7.1(a) and 37.1 of the U.S. District Court for the District of Minnesota." [ECF No. 84 at 3-4.][3] "[D]istrict courts have broad discretion to manage their dockets and address particular circumstances by enforcing local rules and by setting enforceable time limits." *Huggins v. FedEx Ground Package Sys., Inc.*, 592 F.3d 853, 856 (8th Cir. 2010); *see also Sobolik v. Briggs & Stratton Corp.*, Case No. 19-cv-1785 (JRT/RLE), 2010 WL 11640190, at *2 (D. Minn. July 26, 2010) (collecting cases upholding discretion in enforcing local rules). Moreover, Rule 16 requires good cause and the judge's consent to modify a scheduling order. Fed. R. Civ. P. 16(b)(4); *see In re*

---

[2] This is apparently a reference to the Defendant parties themselves, as opposed to Defendants' counsel.

[3] The Court exempted Plaintiffs from the need to contact the magistrate judge's courtroom deputy to scheduling a hearing on non-dispositive motions because the Court agreed to consider all non-dispositive motions based on the written submissions. [ECF No. 84 at 3 n.1.]

*Baycol Prods. Litig.,* 596 F.3d 884, 888 (8th Cir. 2010) (emphasizing district court discretion in maintaining compliance with pretrial orders).

The Court finds Plaintiffs have not shown good cause to suspend Local Rule 7.1. As the events of the past several months have demonstrated, the Plaintiffs' present circumstances do not prevent Plaintiffs' compliance with the rule. And if specific circumstances require the use of a slower means of communication, such as the United States Postal Service, Plaintiffs can seek modification of deadlines upon a showing of diligence and good cause. Because the Plaintiffs have not demonstrated good cause to modify the scheduling order and because Local Rule 7.1(a) is important to the resolution and narrowing of disputes without court intervention, the Court denies Plaintiffs' motion to suspend its requirements.

Furthermore, even assuming for the sake of argument that the Court has the authority to order Defendants to make an exception to their telephone use policies to allow all Plaintiffs to gather on a conference call and/or to use an unmonitored line to meet and confer with opposing counsel, Plaintiffs have not persuaded the Court that the ability to do so is necessary to accomplish the ends of Local Rule 7.1(a).

Accordingly, the Court will deny Plaintiffs' Motion to Suspend LR 7.1(a), LR 7.1(a)(1) and LR 7.1(b)(v) [ECF No. 152].

## II. Plaintiffs' Motion for Payment of Fees and Costs

Plaintiffs move "that the Court order the Defendants . . . to provide for the payment of reasonable expenses relating to expert witnesses, depositions, transcripts, and copying." [ECF No. 168.] Although the scope of Plaintiffs' demand is somewhat

unclear, it appears Plaintiffs ask the Court to order Defendants to pay not only for the costs and fees associated with their anticipated expert witnesses, but also expenses associated with non-expert discovery, such as court reporter and videographer fees for any depositions Plaintiffs wish to take, and the costs of obtaining transcripts of any depositions taken by either Plaintiffs or Defendants. (Pls.' Mem. Supp. Mot. Fees & Costs at 2 [ECF No. 169].)

Plaintiffs assert this Court has authority to order such relief because they qualify to proceed *in forma pauperis* ("IFP") under Minn. Stat. § 563.01. (*Id.* at 4.) In the alternative, Plaintiffs ask the Court to appoint Plaintiffs' yet-to-be-identified experts and order Defendants to pay the costs of those experts under Rule 706 of the Federal Rules of Evidence. (*Id.* at 7-8.)[4]

### A.   Whether the Court Should Grant Plaintiffs' Motion Under Minn. Stat. § 563.01

Plaintiffs' arguments under the Minnesota IFP statute suffer from procedural and substantive defects. First, Plaintiffs did not meet and confer with Defendants' counsel regarding the payment of fees under the Minnesota IFP statute. (Winter Decl. ¶ 2 [ECF No. 173].) Second, Minnesota's IFP statute, by its plain language, only applies to Minnesota state court proceedings. *See* Minn. Stat. § 563.01 subd. 3. (limiting applicability to "any court of the state of Minnesota or any political subdivision thereof").

---

[4] If neither argument is availing, Plaintiffs request the Court appoint those experts to consult with Plaintiffs under Rule 702 of the Federal Rules of Evidence. (Pls.' Mem. Supp. Mot. Fees & Costs at 11-12.) However, that rule deals with expert qualifications and provides no basis for the Court to appoint experts to consult with parties.

Plaintiffs admit as much in their motion papers.[5] (Pls.' Mem. Supp. Mot. Fees & Costs at 4 n.3.) Third, the federal IFP statute, which does apply, does not provide the relief Plaintiffs seek. *See* 28 U.S.C. § 1915(c) (authorizing limited payment by the United States of certain expenses); *see also U.S. Marshals Serv. v. Means*, 741 F.2d 1053, 1057 (8th Cir. 1984) (en banc) ("The plain language, statutory context, and legislative history of 28 U.S.C. § 1915 convince us that the statute neither expressly nor implicitly authorizes the payment of the witness fees and expenses . . . ."); *Greene v. Lake*, Case No. 17-cv-3551 (NEB/ECW), 2018 WL 4590004, at *2 (D. Minn. Sept. 25, 2018). Plaintiffs acknowledge as much. (Pls.' Mem. Supp. Mot. Fees & Costs at 3 n.2.) Plaintiffs present no legal or logical basis for their argument that this Court has the authority to extend to this federal court case the provisions of a Minnesota statute that applies exclusively to Minnesota state court proceedings.

First, Plaintiffs' argument that funding for their discovery efforts impacts the case to such a significant degree that it rises to the level of a substantive right requiring the application of state law under the *Erie* doctrine is inventive but unsustainable. (Pls.' Reply Fees & Costs at 4-7 [ECF No. 201].) Under the *Erie* doctrine, federal courts *sitting in diversity* apply federal law as to matters of procedure but the substantive law of the relevant state. *Erie R.R. Co v. Tompkins*, 304 U.S. 64 (1938). *Erie* is premised on the

---

[5] The Plaintiffs nevertheless believe application of the Minnesota IFP statute is appropriate "pursuant to the principles of supplemental jurisdiction." (Pls.' Mem. Supp. Mot. Fees & Costs at 4 n.3.) There are no state law claims in this case, supplemental jurisdiction does not apply, and the Plaintiffs do not otherwise explain what they mean by "principles of supplemental jurisdiction."

idea that "the rights enjoyed under local law should not vary because enforcement of those rights was sought in the federal court rather than in the state court." *Ragan v. Merchants Transfer & Warehouse* Co., 337 U.S. 530, 532 (1949). The Plaintiffs' remaining claims include 1) a First Amendment denial of the right to access information claim and 2) a Free Exercise claim. These are federal questions. The Plaintiffs have not provided any case, and the Court is unaware of any, where a court that was not sitting in diversity displaced a federal procedural rule in favor of a state procedural rule.

Moreover, "Erie and its offspring cast no doubt on the long-recognized power of Congress to prescribe housekeeping rules for federal courts even though some of those rules will inevitably differ from comparable state rules." *Hanna v. Plumer*, 380 U.S. 460, 473 (1965). In striking the balance between affording access to the indigent and discouraging frivolous suits in federal courts, Congress was not bound by process afforded to similar individuals in state court. *Cf. Christiansen v. Clarke*, 147 F.3d 655, 658 (8th Cir. 1998) (describing the "procedural barriers" and "procedural disincentives to the filing of meritless cases" in § 1915); *Green v. Nottingham*, 90 F.3d 415, 420 (10th Cir. 1996) ("In our view, § 1915(g) announces a procedural rule governing in forma pauperis filings by prisoners. Section 1915(g) does not change the merits of the prisoner's underlying action; it only affects the prisoner's ability to file the action in forma pauperis."). To apply state law in this instance would impermissibly impinge upon Congress's authority to set limits on federal jurisdiction under Article III. *Cf. United States v. MacCollom*, 426 U.S. 317, 321 (1976) ("[E]xpenditure of public funds [on behalf of an indigent litigant] is proper only when authorized by Congress."); *Murray v.*

7

*Dosal*, 150 F.3d 814, 818 (8th Cir. 1998) (upholding limitations in § 1915 as concomitant with Congress's authority to set limits on federal jurisdiction).  Rather, the required course of action is to apply the federal IFP statute and its provisions—and limits—on shifting costs from indigent plaintiffs.[6]  *Cf. Humann v. KEM Elec. Co-op., Inc.*, 497 F.3d 810, 813 (8th Cir. 2007) (affirming district court's taxing of costs under Rule 54(b) over conflicting state law).

Second, Plaintiffs' reliance on *Vitek v. Jones*, 445 U.S. 480 (1980) for the proposition that procedural due process compels Defendants to bear the costs of Plaintiffs' discovery and experts is also misplaced.  The Supreme Court's discussion of the process necessary to protect a prisoner's liberty interest when faced with an involuntary transfer to a hospital does not establish a constitutional right to a court-appointed expert paid for by the opposing party in a civil suit.

### B. Whether the Court Should Appoint—and Order Defendants to Pay For—Plaintiffs' Experts Under Fed. R. Evid. 706

Plaintiffs' arguments under Federal Rule of Evidence 706, while they present a closer question, are also unavailing.  Rule 706 allows the Court to appoint expert witnesses on a party's motion or on its own.  Fed. R. Evid. 706(a).  The Court may set reasonable compensation for such an expert and require him or her to be paid "by the parties in the proportion and at the time that the court directs – and the compensation is

---

[6] In any event, the Court notes that neither IFP statute shifts the costs to the opposing party.  Minn. Stat. § 563.01 allows a state court judge to direct that certain types of expenses incurred in connection with state court litigation be paid by the state of Minnesota.  Section 1915(c) allows a federal court judge to direct that a more limited set of expenses incurred in connection with federal litigation be paid by the United States.

then charged like other costs." Fed. R. Evid. 706(c)(2).  The Eighth Circuit in *Means* held that the rule, taken together with Federal Rule of Evidence 614(a), confers upon the district court "discretionary power to call [the party's] lay and expert witnesses as the court's own witnesses and to order the government as a party to this case to advance their fees and expenses, such advance payment to be later taxed as costs" against the losing party.  *Means*, 741 F.2d at 1057.  However, "this discretionary power is to be exercised only under compelling circumstances" such as where the witnesses are "absolutely essential to the progress of a fair trial and to the interests of justice." *Id.*

The Court concludes that at this point, the Plaintiffs have failed to demonstrate compelling circumstances warranting appointment of expert witnesses by the Court under Rule 706.  First, indigent civil litigants are ordinarily required to bear the costs of their own experts.  *See Greene,* 2018 WL 4590004, at *2; *Vogel v. Turner*, Case No. 11-cv-0446 (PJS/JJG), 2013 WL 358874, at *11 (D. Minn. Jan. 8, 2013), *adopted*, 2013 WL 359072 (D. Minn. Jan. 30, 2013).  Second, while Plaintiffs have described in very general terms the issues on which they would like to call experts,[7] they acknowledge they do not know the precise extent of the expert evidence they wish to obtain.  Furthermore, they have not identified specific experts, and they have not shown that the expert evidence

---

[7] "Plaintiffs do not know the precise extent of the required expert testimony in this case. . . . [but] predict they will need to provide expert testimony on at least the following topics: 1) if there is appropriate software commercially available to adequately satisfy the needs of the defendants' to monitor Plaintiffs' usage; 2) Modern Technology is required for comprehensive sex offender treatment under the Good Lives model; and 3) to bring a totality of the issues surrounding modern technologies to a finality." (Pls.' Mem. Supp. Mot. Fees & Costs at 2–3.)

they seek would be indispensable to their case. *See Greene*, 2018 WL 4590004, at *3 (concluding movant failed to show compelling circumstances where movant "does not know the precise extent of the required expert testimony in this case"). They have not shown that the anticipated experts' testimony is the only means of obtaining evidence to stave off summary judgment, *see Spann v. Roper*, 453 F.3d 1007, 1009 (8th Cir. 2006), or that the subject matter is so complex and esoteric that appointment of experts is necessary for the benefit of the Court. *See Rachel v. Troutt*, 820 F.3d 390, 397 (10th Cir. 2016). Plaintiffs' conclusory assertions of need and unsupported fears of fraud upon the Court are plainly insufficient. As the Plaintiffs admit, "[they] have not indicated any problem obtaining an expert(s)." (Pls.' Reply Fees & Costs at 10.) Finally, to the extent Plaintiffs' arguments assume that a class will be certified, the Court notes that Plaintiffs' motion for class certification has not yet been ruled on. Absent compelling circumstances, the Court will not "tilt the scales in favor of one litigant by funding its expert witnesses under [Rule 706]." *Young v. Martin*, 801 F.3d 172, 185 (3rd Cir. 2015).

The Court does not rule out the possibility that such a showing could be made in the future, although the Court does not yet see anything to suggest this particular case will eventually present the requisite "compelling circumstances." But at this point, Plaintiffs' request is, at the very least, premature. Among other things, fact depositions have not yet been taken, class certification is still under consideration, and it is not clear whether any of Plaintiffs' claims would survive summary judgment with or without expert testimony. Finally, the Court notes that a future motion to appoint experts under Rule 706, if Plaintiffs believe they can make the necessary showing, should be directed to

the District Judge at a later date, at least after a ruling on the currently pending motions, as a decision on such a motion would be integrally intertwined with her role in presiding over any trial that may occur in this matter.

## III.     Conclusion

Therefore, based on the foregoing and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion to Suspend LR 7.1(a), LR 7.1(a)(1) and LR 7.1(b)(v) [ECF No. 152] is **DENIED**; and

2. Plaintiffs' Motion for Payment of Fees and Costs [ECF No. 168] is **DENIED**.

Dated: February 11, 2022

*s/ Hildy Bowbeer*
HILDY BOWBEER
United States Magistrate Judge